1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ERIN DEON CRAWFORD,                          No.  2:14-cv-1464-EFB P (TEMP)

12                    Petitioner,

13         vs.

14    F. FOULK,                                     ORDER

15                    Respondent.

16

17         Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.[1]  He challenges a judgment of conviction entered

19    against him on May 23, 2012, in the Sacramento County Superior Court on charges of second

20    degree robbery with use of a weapon.  He seeks federal habeas relief on the following grounds:

21    (1) destruction of evidence by law enforcement authorities violated his right to due process; (2)

22    his trial counsel rendered ineffective assistance; and (3) the trial court's admission into evidence

23    of an inflammatory photograph violated his right to due process.  Upon careful consideration of

24    the record and the applicable law, the court concludes that petitioner's application for habeas

25    corpus relief must be denied for the reasons discussed below.

26    /////

27    _____

28         [1] The parties in this action have consented to proceed before a United States Magistrate
      Judge pursuant to 28 U.S.C. § 636(c).

                                                    1

1    **I. Background**

2         In its unpublished memorandum and opinion affirming petitioner's judgment of

3    conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

4    following factual summary:

5              In May 2012, a jury found defendant Erin Crawford guilty of
               second degree robbery, during which he personally used a gun.  The
6              trial court sentenced him to 12 years in state prison.

7              Defendant's focus on appeal centers on a photographic exhibit of
               him, in which he appears to be holding a gun.  He contends the trial
8              court abused its discretion under Evidence Code section 352 in
               admitting the photo into evidence, and trial counsel was ineffective
9              for failing to argue other bases for excluding it.  We shall affirm the
               judgment.
10

11             **FACTUAL AND PROCEDURAL BACKGROUND**

12             In August 2009, the pregnant victim and her husband had returned
               to their home after an outing at about 9:45 p.m.  They parked the
13             car in their stall immediately in front of their apartment, and began
               to unload the trunk.  As her husband handed her purse to the victim,
14             two men approached them from behind.  Both were masked.  One
               of them snatched the purse from the victim with sufficient force to
15             bruise the shoulder on which she had started to place the strap.  The
               robber holding the purse jumped over a nearby fence.  The
16             remaining robber was unsuccessful in his first attempt to scale the
               fence.  As the husband started to approach him, the second robber
17             pulled up his shirt.  The victim heard him tell her husband that he
               had a gun, but did not see one.  Her husband, who did not recall
18             either of the robbers saying anything, could see what appeared to be
               a "silver-looking gun" (of the type that loads from the bottom with
19             a magazine and has a slide on the top) tucked into the second
               robber's waistband.  The second robber pulled it out slightly,
20             indicating that the husband should not pursue him.  The armed
               robber then successfully jumped over the fence.

21             Neither the victim nor her husband could identify the robbers
               because of the masks.  To the husband, the first robber appeared
22             thinner and the second appeared out of shape.  The purse-snatcher
               was about six feet tall, and the armed robber was a couple of inches
23             shorter.  The husband had been approached a couple of days earlier
               out of the blue by a couple of Latino neighbors when he was
24             outside, who had engaged him in what he thought was a
               "suspicious" conversation.  Because he saw these neighbors drive
25             away at a high rate of speed after the robbery, he initially described
               the robbers as being Latino during the 911 call.  (These neighbors
26             actually were Indian, and were in fact attempting to chase down the
               robbers, but lost them in the darkness of a field.)  However, in
27             talking to the police later, the husband "was pretty positive" the
               robbers were "two Black males" because "their hands look[ed]
28             dark."  The victim also saw dark skin through the eyeholes of the

masks.  Although she could not identify defendant in court as one of the robbers, she thought his eyes protruded in a similar fashion to one of the robbers.

The victim had run away, screaming for help while dialing 911 on her cell phone.  One of the neighbors was standing outside talking on his cell phone when she caught his attention.  Based on the skin color of their exposed wrists, he believed the robbers were "two Black males."  Before the second robber had vaulted the fence, he removed his mask and the neighbor could see his face momentarily, and his dreadlocked hair.  He was about 100 feet away.  However, as he admitted to the police, it was dark and he could not get a good look.

On their return, the Indian neighbors found a cell phone at the base of the wall where the robbers had scaled it.  They gave it to the police, who were talking to the neighbor who had seen the one robber's face.  The neighbor looked at the cell phone's "wallpaper" and recognized it as a picture of the robber he had just seen.  The neighbor later selected defendant's picture in a photo lineup that police had prepared after identifying defendant as the person owning the phone; the neighbor was 60 percent certain of the identification.

In examining the Kyocera cell phone, the police determined there had been an exchange of calls between defendant and his then-girlfriend shortly before the robbery.  The girlfriend also attempted to call the phone later on the night of the robbery.  There was a photo stored to the cell phone a week earlier.  It showed defendant holding what appeared to be a silver gun.  In the opinion of the investigating detective, this was a real gun because a replica typically has a different-colored tip, usually orange.  She could not tell from the picture if it was an "airsoft" gun (one which fires air-pressured rounds).

When interviewed in October 2009, defendant asserted that he had lost the cell phone soon after buying it.  At trial, defendant testified the lost phone was a different one.  His girlfriend had bought the recovered cell phone for him, and had playfully seized it from him on the day before the robbery.  He believed it was still in her possession on the day of the robbery, when he went to dinner and a movie with his girlfriend and her family.  The gun in the picture of him was a BB gun that was in his girlfriend's possession; just before taking the picture, she had pretended to threaten to kill him with it if he ever were unfaithful to her.  When she saw that he took her seriously, she asked him to pose with it because she found "bad boys" arousing.  She took the gun back after photographing him.  Defendant never felt the need to have his former girlfriend produce the BB gun in his defense.

*People v. Crawford*, No. C071437, 2013 WL 6020805, at **1-2 (Cal. Ct. App. 3rd Dist. Nov. 14, 2013).

/////

3

1    **II.  Standards of Review Applicable to Habeas Corpus Claims**

2            An application for a writ of habeas corpus by a person in custody under a judgment of a

3    state court can be granted only for violations of the Constitution or laws of the United States.  28

4    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

5    application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502

6    U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

7            Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

8    corpus relief:

9                    An application for a writ of habeas corpus on behalf of a
     person in custody pursuant to the judgment of a State court shall not
10               be granted with respect to any claim that was adjudicated on the
     merits in State court proceedings unless the adjudication of the
11               claim -

12                      (1) resulted in a decision that was contrary to, or involved
     an unreasonable application of, clearly established Federal law, as
13               determined by the Supreme Court of the United States; or

14                      (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
15               State court proceeding.

16           For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

17   holdings of the United States Supreme Court at the time of the last reasoned state court decision.

18   *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

19   ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.

20   Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

21   what law is clearly established and whether a state court applied that law unreasonably." *Stanley*,

22   633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

23   precedent may not be "used to refine or sharpen a general principle of Supreme Court

24   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall*

25   *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

26   (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

27   widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

28   be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of

an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

1   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

2   § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

3   considering de novo the constitutional issues raised.").

4        The court looks to the last reasoned state court decision as the basis for the state court

5   judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If

6   the last reasoned state court decision adopts or substantially incorporates the reasoning from a

7   previous state court decision, this court may consider both decisions to ascertain the reasoning of

8   the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When

9   a federal claim has been presented to a state court and the state court has denied relief, it may be

10   presumed that the state court adjudicated the claim on the merits in the absence of any indication

11   or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption

12   may be overcome by a showing "there is reason to think some other explanation for the state

13   court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

14   Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

15   expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

16   the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133

17   S.Ct. 1088, 1091 (2013).

18        Where the state court reaches a decision on the merits but provides no reasoning to

19   support its conclusion, a federal habeas court independently reviews the record to determine

20   whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v.*

21   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo

22   review of the constitutional issue, but rather, the only method by which we can determine whether

23   a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no

24   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

25   reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

26        A summary denial is presumed to be a denial on the merits of the petitioner's claims.

27   *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze

28   just what the state court did when it issued a summary denial, the federal court must review the

state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claims**

**A. Destruction of Evidence**

In his first ground for relief, petitioner claims that the police violated his right to due process by intentionally destroying exculpatory evidence in the form of a videotape that may have depicted the robbery of which he was convicted. ECF No. 1 at 7-10. The underlying facts of this claim can be understood by a review of various parts of the state court record.

**1. Background**

In the trial court, petitioner filed a pretrial motion "to dismiss or for sanctions" based on "destruction of evidence and denial of due process." Reporter's Transcript on Appeal (RT) at 29. At the hearing on that motion, petitioner's counsel explained the factual background, as follows:

> On August 10th, 2009, these two folks reported having been robbed. And initially the husband of the husband and wife pair reported to 9-1-1- that he was robbed by two males he believed to be Hispanic, believed them to be neighbors, thought they were related to a burgundy sedan.
>
> That same evening when interviewed by police, both the husband and wife described the assailants as black men, made no mention of any relationship to the car.
>
> The following day, August 11th, the female victim's brother called law enforcement, reported that the suspects were back again in the area where the cell phone was recovered on the 10th, the night

before, and appeared to be looking as though they were looking for lost property.

Those two people were detained.  They were Avinik And Shwanneel Chand.  During the course of that detention, neither of the complaining witnesses were home.

There's no indication that law enforcement made any effort to contact Mr. Beazer, who is the other eyewitness, but Officer Hall of the Sacramento Police Department did go to the management of the apartment complex and was able to view surveillance tape from the night before.

And the report indicates that Officer Hall reported that he was able to verify that Avinik Chank was chasing after someone.

It's unclear from the information that we have, whether or not Officer Hall saw a person or persons being chased or if he saw Avinik Chand leaving the apartment complex.

Later that day, the 11th, a community service officer went to pick up copies of the surveillance and was given two disks, one from August 10th purporting to be the information that had been shown to Officer Hall, and another from an earlier unreported robbery from July 23rd of that year.

And when the management – when the manager, Miss Paliso (ph) supplied those two disks, it was her comment and her belief that the suspects in both robberies were the same.

Detective Thorgrimson reviewed the video that had been booked on August 25th.  She only – it appears to me she only reviewed the video from August 10th and determined that none of the video that was contained in that disk, as far as the August 10th incident, actually showed the incident or the chase, any of the things that Officer Hall and that the manager had said they had seen on the video.

As I indicated in chambers, we have had a very difficult time – I've had a very difficult time getting that video to work.

I was finally able to do that last week and confirm that the video is as described by the detective.

There's no indication that any attempts were made to retrieve the correct video, that is, video which was viewed by Officer Hall, which based on what limited information is contained in the reports and in the C.A.D. logs, shows something related to this robbery.

It's my belief, based on the information that I do have, that the video that was not recovered, the five, ten minutes before in terms of chronologically before the video that we do have, at the very least shows what Avinik Chand's role was and may possibly show, and I believe should show, suspects, given that Miss Paliso

indicated her belief that it was the same two people this time as it had been in July.

As I indicated to the Court and counsel in chambers, I spent a fair amount of time with the July 23rd video and singled out, based on behavior and sort of posture, a group – a pair of men who I believed were the people that Miss Paliso was referring to as suspects in July.

It is my belief, based on her statements, that those same two men, or two men who appeared to be the same, did appear on the August 10th video, but it's not the video that the police booked.

It's not the video that was reviewed by the detective on August 25th of 2009, and it does not appear that any efforts were made to secure the video which depicted those suspects.

*Id.* at 30-32. In response to this factual recitation by petitioner's counsel, the prosecutor stated that "we never had the video in our possession that she is describing." *Id.* at 32. She went on to explain that:

. . . the officers went down. They spoke with this Miss Paliso, and she provided them with two CD's and said, here are the CD's.

Those CD's were booked into evidence. Those CD's were turned over to the defense, and those CD's are the only evidence the people have had.

The law enforcement officers failed to go back and retrieve additional information. If that is the problem here, then that is a subject for cross-examination.

*Id.* She argued that petitioner's trial counsel "is asking the Court to dismiss the case, potentially, or give a sanction, which is a severe penalty to the people for destruction of a video we never had based on speculation of evidence that may or may not even have existed." *Id.* at 34.

Petitioner's trial counsel stated that she was "not suggesting that the police wantonly destroyed" the videotape. However, she did argue that the police should have obtained the video that Officer Hall viewed when they discovered they did not have that video. She explained:

In this case Officer Hall saw the video. They recovered what they thought was the video that Officer Hall saw and knew within weeks that they had the wrong video. . . their failure to preserve it, knowing that it showed, at the very least, what was either someone giving chase or someone driving to get away from a crime they had

/////

1  just committed, is material and it's relevant to Mr. Crawford's
   defense.

2

3  *Id.* She concluded:

4  Historically, and I think we all have had the experience that videos
   generally are kept for about 30 days.

5

6  . . . that two and a half month delay, coupled with the police being
   on notice that they didn't have what they thought they did, is
   sufficient to trigger a duty for them to try and procure it.

7

8  And they didn't even so much as do that.  And as a result, Mr.
   Crawford is prejudiced, and there's nothing we can do to recreate
   that video.

9

10  *Id.* at 35.

11  The trial court denied petitioner's motion to dismiss, ruling that "there is – has been no

12  showing that law enforcement has destroyed, intentionally or otherwise, relevant and material and

13  intentionally exculpatory evidence within their possession."  *Id.*

14  In his claim before this court, petitioner argues that "this critical surveillance footage that

15  the police used to exonerate the original suspects was destroyed and denied me any fundamental

16  fair trial afterwards by closing the window of opportunity of me showing the jury actual

17  surveillance of the crime and the real culprits."  ECF No. 1 at 8.

18  Petitioner raised his claim of destruction of evidence for the first time in a petition for writ

19  of habeas corpus filed in the Sacramento Superior Court.  Resp't's Lodg. Doc. 11.  The Superior

20  Court denied the claim, reasoning as follows:

21  Petitioner claims that the prosecutor should have preserved and
   should have given to the defendant certain surveillance footage that
22  would have been exculpatory in his robbery trial. . . .

23  Habeas corpus cannot serve a second appeal or a substitute appeal.
   (*In re Harris* (1993) 4 Cal.4th 813, 829.)  This rule covers matters
24  that could have been raised on appeal but were not as well as
   matters that were raised on appeal and decided.  (*Ibid.*); *see also In*
25  *re Dixon*, (1953) 42 Cal.2d 756, 759; *In re Waltreus* (1965) 62
   Cal.2d 218, 225.)

26

27  Petitioner claims that the prosecution failed to preserve exculpatory
   evidence and turn it over to him.  The evidence at issue – a
   surveillance videotape that may have shown the robbery itself –
28  was apparently never seized by police.  This evidence was the

subject of a *Trombetta* motion.  A defendant cannot get writ relief for denial of a *Trombetta* motion, but may raise the issue on appeal.  (*See People v. Municipal Court* (1974) 12 Cal.3d 658, 660.)  Because this question may be appealed, it cannot be resolved by habeas petition.

Resp't's Lodg. Doc. 12 at 1 of 3.

Petitioner raised the claim again in two petitions for a writ of habeas corpus filed in the California Court of Appeal.  Resp't's Lodg. Doc. 13, 15.  In his first such petition, petitioner described the factual basis of his claim as follows:

A couple of days prior to the 8-10-09 robbery, Avnick Chand and Shwannel Chandre approached victim "Mahbub Masumi," asking what he does for work.  (1RT 109-110).  On 8-10-09, following the robbery in question police were called and alerted that the suspects were Hispanic.  Mahbub Masumi believed the Chand Brothers were initially responsible for the robbery due to their suspicious behavior.  On 8-11-09 the victim's brother called the Sacramento Police Department and reported the suspects were back.  Avnick Chand and Shwannel Chandre were detained and a search of their car followed.  The brothers were taken to the Police station for questioning.  Officer Hall returned to Silver Creek Apartments.  He met with management and was able to view surveillance from the night of the robbery.  Officer Hall reported that he was able to verify that Avnick Chand was chasing after the suspects who committed the crime.  Neither victim of the crime was available to view the Chand Brothers for identification, nevertheless they were released due to the 8-10-09 robbery footage.  On 8-11-09 around 4:00 p.m. Community Service Officer Vang transported and booked two cds, one from the robbery on 7-23-09 and another of the 8-10-09 robbery.  (see discovery page 23)  The Sacramento Police Department assigned Detective Thorgrimson to the case for follow-up on 8-13-09.  On 8-25-09 Detective Thorgrimson reviewed only the 8-10-09 robbery film that CSO Vang booked into officer evidence files.  Detective Thorgrimson never reviewed the 7-23-09 robbery film despite Lauren Polisso believing suspects in both surveillance films were the same.  Detective Thorgrimson determined that none of the video footage that Lauren Polisso and Officer Hall viewed relevant to the 8-10-09 robbery film was in her possession.  The Detective did absolutely nothing to retrieve Avnick Chand or Shwannel Chandre, or even the missing footage the Sacramento Police used to exonerate them.  Avnick Chand testified as a witness for the prosecution despite the circumstances.

Resp't's Lodg. Doc. 13 at 16 of 46.

/////

/////

/////

11

1    In his second habeas petition filed in the California Court of Appeal, petitioner provided

2    the following additional factual details:

3         Three years later during trial Mahbub Masumi, the husband of the
         victim pair, testified about his original thoughts of Avnick Chand
4         and Shwannel Chandre being the culprits.

5         This critical surveillance footage that the police used to exonerate
         the original suspects was destroyed and denied me any fundamental
6         fair trial afterwards.  I could of showed the jury actual footage of
         the crime and the real culprits.
7

8    Resp't's Lodg. Doc. 15 at consecutive p. 16.

9    The California Court of Appeal summarily denied both of petitioner's habeas petitions.

10   Resp't's Lodg. Doc. 14, 16.

11   Petitioner raised this claim for the final time in a petition for writ of habeas corpus filed in

12   the California Supreme Court.  Resp't's Lodg. Doc. 17.  The Supreme Court denied that petition,

13   citing *People v. Duvall*, 9 Cal.4th 464, 474 (1995); *In re Dixon*, 41 Cal.2d 756, 759 (1953), and *In*

14   *re Swain*, 34 Cal.2d 300, 304 (1949).  Resp't's Lodg. Doc. 18.

15                              **2.  Procedural Default**

16   Respondent argues that the California Supreme Court's citation to *In re Dixon* constitutes

17   a procedural bar which precludes this court from addressing the merits of petitioner's claim of

18   destruction of evidence.  ECF No. 15 at 18-19.  Respondent also urges this court to deny

19   petitioner's claim on the merits.  *Id.* at 20-22.

20   As a general rule, "[a] federal habeas court will not review a claim rejected by a state

21   court 'if the decision of [the state] court rests on a state law ground that is independent of the

22   federal question and adequate to support the judgment."  *Walker v. Martin*, 562 U.S. 307, 314

23   (2011) (quoting *Beard v. Kindler*, 558 U.S. 53 (2009)).  However, a reviewing court need not

24   invariably resolve the question of procedural default prior to ruling on the merits of a claim.

25   *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *see also Franklin v. Johnson*, 290 F.3d 1223,

26   1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits

27   issues presented by the appeal, so it may well make sense in some instances to proceed to the

28   merits if the result will be the same"); *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004) (noting

1   that although the question of procedural default should ordinarily be considered first, a reviewing

2   court need not do so invariably, especially when the issue turns on difficult questions of state

3   law).  Where deciding the merits of a claim proves to be less complicated and less time-

4   consuming than adjudicating the issue of procedural default, a court may exercise discretion in its

5   management of the case to reject the claim on the merits and forgo an analysis of procedural

6   default.  *See Franklin*, 290 F.3d at 1232 (citing *Lambrix*, 520 U.S. at 525).  Under the

7   circumstances presented here, the court finds that petitioner's claim can be resolved more easily

8   by addressing it on the merits.  Accordingly, the court will assume that the claim is not defaulted.[3]

9                          **3.  Applicable Legal Principles**

10          A failure to preserve evidence violates a defendant's right to due process if the

11   unavailable evidence possessed "exculpatory value that was apparent before the evidence was

12   destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable

13   evidence by other reasonably available means."  *California v. Trombetta*, 467 U.S. 479, 489

14   (1984).  A defendant must also demonstrate that the police acted in bad faith in failing to preserve

15   potentially useful evidence.  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Phillips v.*

16   *Woodford*, 267 F.3d 966 (9th Cir. 2001).  The presence or absence of bad faith turns on the

17   government's knowledge of the apparent exculpatory value of the evidence at the time it was lost

18   or destroyed.  *Youngblood*, 488 U.S. at 56-57 n.*; *see also United States v. Cooper*, 983 F.2d 928,

19   931 (9th Cir. 1993).  The mere failure to preserve evidence which could have been subjected to

20   tests which might have exonerated the defendant does not constitute a due process violation.

21   *Youngblood*, 488 U.S. at 57; *Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989).

22          **4.  Analysis**

23          It appears that petitioner is claiming the police failed to obtain and preserve a surveillance

24   videotape of the August 10, 2009, robbery that might have demonstrated he was not the

25   perpetrator.  He contends that because the apartment landlord expressed the opinion that the

26   robbers on August 10, 2009 were the same people who committed the earlier robbery at the

27          _____

            [3]   It appears that none of the state courts to which petitioner presented this claim
28   addressed it on the merits.  Accordingly, the court will analyze the claim using *de novo* review.
     *Stanley*, 633 F.3d at 860; *Reynoso*, 462 F.3d at 1109); *Nulph,* 333 F.3d at 1056.

                                            13

1   complex, the missing videotape would possibly demonstrate that he was not the perpetrator of

2   either robbery.  However, there is no evidence before this court, aside from speculation, that this

3   is what the missing videotape would show.  The officer who reviewed the videotape of the

4   August, 2009 robbery concluded that it simply showed the victims' neighbors chasing someone.

5   This falls short of demonstrating that petitioner was not the perpetrator.  As noted above, the mere

6   possibility that examination of the videotape may possibly have revealed exculpatory evidence is

7   simply not enough to satisfy the *Trombetta* standards.  *See Illinois v. Fisher*, 540 U.S. 544, 538

8   (2004) (finding no due process violation resulting from destruction of evidence where "at most,

9   respondent could hope that, had the evidence been preserved, a . . . test conducted on the

10   substances would have exonerated him").

11        There is also no evidence before the court that the police agents destroyed or failed to

12   preserve a videotape that they knew had exculpatory value.  Even if the police somehow erred in

13   failing to obtain a videotape, if any, showing the actual robbery, bad faith on the part of the

14   government in this context "requires more than mere negligence or recklessness." *United States*

15   *v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011) (citing *Youngblood*, 488 U.S. at 59).  As noted by

16   respondent, the Due Process Clause does not impose on the police "an undifferentiated and

17   absolute duty to retain and to preserve all material that might be of conceivable evidentiary

18   significance in a particular prosecution." *Youngblood*, 488 U.S. at 58.  Here, the police did not

19   violate petitioner's constitutional rights in possibly failing to take possession of a videotape that

20   they were not aware of or did not believe had any evidentiary value with respect to the petitioner.

21        Petitioner has failed to demonstrate that the police in this case violated his right to due

22   process by failing to preserve or obtain potentially exculpatory evidence.  Accordingly, he is not

23   entitled to federal habeas relief with respect to that claim.

24        **B.  Ineffective Assistance of Counsel**

25        In his second ground for relief, petitioner claims that his trial counsel rendered ineffective

26   assistance in failing to call five trial witnesses; namely: Monique Wallace, Mauricea Vale, Lauren

27   Polisso, Officer Van Che and Officer Hall.  Petitioner states that Monique Wallace and Mauricea

28   Vale could have supported his alibi that he was "celebrating Mauricea's birthday on the day of

1  the crime and was enjoying a movie at the time of the crime alongside them." ECF No. 1 at 11.

2  He explains that Lauren Polisso, the manager of the apartment complex, "had the ability to

3  identify the suspects based on her recalculations of the surveillance tapes and also her beliefs that

4  the suspects were the same in both surveillance tapes." *Id.* at 12.  Petitioner contends that Officer

5  Hall should have been called as a defense witness because he "viewed the surveillance from the

6  8-10-09 robbery and possessed the ability to alert the jury of his sightings." *Id.*  Finally,

7  petitioner states that Community Service Officer Van Chue should have been called as a trial

8  witness to "confirm he collected evidence, he had taken statements from Pauren Polisso and other

9  witnesses and to also confirm his own giving statements." *Id.*

10      Petitioner informs the court that he and his trial counsel discussed the evidence and

11  decided to call these five trial witnesses, believing they could establish he was not the perpetrator

12  of the August 10, 2009 robbery.  *Id.* at 12-13.  He explains that he and trial counsel "pre-planned

13  our defense/trial strategy anticipating the significance each planned witness we desired to call

14  would play in maintaining my innocence."  *Id.*   However, according to petitioner, after trial

15  began his trial counsel took him by "total surprise" by announcing that "The Defense would not

16  be calling witnesses at this time, despite the defense we previously discussed in trial preparation."

17  *Id.* at 13.

18      Petitioner raised this claim of ineffective assistance of counsel in his habeas petition filed

19  in the California Supreme Court.  Resp't's Lodg. Doc. 17.  The Supreme Court denied that

20  petition, citing *People v. Duvall*, 9 Cal.4th 464, 474 (1995); *In re Dixon*, 41 Cal.2d 756, 759

21  (1953), and *In re Swain*, 34 Cal.2d 300, 304 (1949).  Resp't's Lodg. Doc. 18.  Respondent argues

22  that the California Supreme Court's citation to *People v. Duvall* and *In re Swain* reflects that

23  petitioner's claim has not been exhausted in state court.  ECF No. 15 at 24-26.  Respondent also

24  urges this court to deny petitioner's claim on the merits.  *Id.* at 26-29.

25      Generally, a state prisoner must exhaust all available state court remedies either on direct

26  appeal or through collateral proceedings before a federal court may consider granting habeas

27  corpus relief.  28 U.S.C. § 2254(b)(1).  A state prisoner satisfies the exhaustion requirement by

28  fairly presenting his claim to the appropriate state courts at all appellate stages afforded under

15

1   state law.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Casey v. Moore*, 386 F.3d 896, 915-16 (9th

2   Cir. 2004).  However, an application for a writ of habeas corpus "may be denied on the merits,

3   notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

4   State."  28 U.S.C. § 2254(b)(2).  *See Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (a

5   federal court considering a habeas petition may deny an unexhausted claim on the merits when it

6   is perfectly clear that the claim is not "colorable").  Assuming *arguendo* that petitioner's claim of

7   ineffective assistance of counsel is unexhausted, it must be denied on the merits pursuant to 28

8   U.S.C. § 2254(b)(2) for the reasons discussed below.

9              **1.  <u>Applicable Legal Standards</u>**

10        The clearly established federal law governing ineffective assistance of counsel claims is

11   that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  To

12   succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was

13   deficient and that (2) the "deficient performance prejudiced the defense."  *Id.* at 687.  Counsel is

14   constitutionally deficient if his or her representation "fell below an objective standard of

15   reasonableness" such that it was outside "the range of competence demanded of attorneys in

16   criminal cases."  *Id.* at 687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so

17   serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  *Richter*, 562 at

18   104 (quoting *Strickland*, 466 U.S. at 687).

19        Prejudice is found where "there is a reasonable probability that, but for counsel's

20   unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466

21   U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

22   outcome."  *Id.*  "The likelihood of a different result must be substantial, not just conceivable."

23   *Richter*, 131 S. Ct. at 792.

24         "The standards created by *Strickland* and § 2254(d) are both "highly deferential," and

25   when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations

26   omitted).  Thus, in federal habeas proceedings involving "claims of ineffective assistance of

27   counsel, . . . AEDPA review must be """doubly deferential""" in order to afford "both the state

28   court and the defense attorney the benefit of the doubt."  *Woods v. Daniel*, ___U.S.___, ___, 135

S. Ct. 1372, 1376 (2015) (quoting *Burt v. Titlow*, 571 U.S. ___, ___, 134 S. Ct. 10, 13 (2013)).

As the Ninth Circuit has recently acknowledged, "[t]he question is whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Bemore v.*

*Chappell*, 788 F.3d 1151, 1162 (9th Cir. 2015) (quoting *Richter*, 562 U.S. at 105).  *See also*

*Griffin v. Harrington*, 727 F.3d 940, 945 (9th Cir. 2013) ("The pivotal question is whether the

state court's application of the *Strickland* standard was unreasonable. This is different from

asking whether defense counsel's performance fell below *Strickland*'s standard.") (quoting

*Richter*, 562 U.S. at 101).

## 2. **Analysis**

Petitioner has failed to demonstrate that his trial counsel's failure to call the five witnesses

described above "infect[ed] his entire trial with [an error] of constitutional dimension."  *White*,

874 F.2d at 603.  Aside from his vague and conclusory allegations, petitioner has failed to explain

the testimony these witnesses would have given at his trial, or even to establish that they would

have agreed to testify.  Without evidence as to what additional witnesses would have testified to

at trial, a habeas petitioner cannot establish prejudice with respect to a claim of ineffective

assistance of counsel for failing to call trial witnesses.  *See Dows v. Wood*, 211 F.3d 480, 486-87

(2000) (no ineffective assistance of counsel for failure to call an alleged alibi witnesses where

petitioner did not identify an actual witness, did not provide evidence that the witness would have

testified, nor presented an affidavit from the alleged witness he claimed should have been called);

*Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (same); *United States v. Harden*, 846 F.2d

1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a

witness where, among other things, there was no evidence in the record that the witness would

testify); *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to satisfy

the prejudice prong of an ineffectiveness claim because he offered no indication of what potential

witnesses would have testified to or how their testimony might have changed the outcome of the

hearing).  In short, there is no evidence before this court that testimony from any of these five

witnesses would have changed the outcome of petitioner's trial.

/////

1   Further, since petitioner and his trial counsel discussed the possibility of calling these five

2   witnesses at trial, it appears that counsel's ultimate decision not to call them was tactical.

3   Reasonable tactical decisions, including decisions with regard to the presentation of the case, are

4   "virtually unchallengeable." *Strickland*, 466 U.S. at 687-90.  "The decision whether to call any

5   witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the

6   sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d

7   1294, 1321 (2nd Cir. 1987). *See also Taylor v. Illinoi*s, 484 U.S. 400, 418 (1988) ("Putting to one

8   side the exceptional cases in which counsel is ineffective, the client must accept the consequences

9   of the lawyer's decision to . . . decide not to put certain witnesses on the stand . . . ").  Petitioner

10  has failed to overcome the strong presumption that trial counsel's decision not to call these five

11  witnesses was a reasonable tactical decision and sound trial strategy. *See Morris v. California*,

12  966 F.2d 448, 456 (9th Cir. 1991) (a tactical decision not to call a particular witness cannot form

13  the basis of a ineffective assistance of counsel claim, even if the defendant disagrees with the

14  decision).

15  Because petitioner has failed to demonstrate either deficient performance or prejudice

16  with respect to this claim of ineffective assistance of counsel, he is not entitled to federal habeas

17  relief.

18  **C. Admission of Evidence**

19  In his third ground for relief, petitioner claims that the trial court's admission into

20  evidence of the "inflammatory" photograph showing him posing with a gun violated his state and

21  federal right to due process and the California Evidence Code.  ECF No. 1 at 18.  For the

22  following reasons, that claim must be denied.

23  **1. State Court Decision**

24  The last reasoned decision on this claim was issued by the California Court of Appeal on

25  direct appeal.  The court's opinion is as follows:

26  Before trial, defense counsel sought to exclude the photo of
    defendant with the gun, asserting "No gun was ever recovered from
27  the scene of the robbery.  No gun was ever recovered from
    [defendant's] home or person."  The prosecutor argued that the
28  victim's husband had described what appeared to be a silver

18

semiautomatic handgun, and defendant was holding what appeared to be a silver semiautomatic handgun in the photo.  Defense counsel pointed out that the prosecution had never even established a foundation for the photo by asking the husband whether the gun in the photo looked like the one he had seen in the robbery.   In admitting the photo, the trial court concluded it was highly probative because it showed defendant possessed a gun similar in attributes to the one that the husband had described.  It did not find any prejudice substantially outweighing this probative value.

Defendant argues that without any evidence that it was the same gun, the photo did not have any probative value other than the impermissible inference that because he posed in the past with what appeared to be a gun, he was the robber holding a similar gun.  As a result, trial counsel was ineffective for failing to move to exclude the photo on this basis pursuant to section 1101 as improper character evidence.  Defendant also contends the trial court abused its discretion in balancing what he considers minimal at best probative value against the substantial prejudice of depicting him as a person who would pose with a gun.

Other than debate general principles of relevance and prejudice, neither of the parties discuss directly relevant precedent involving the admission of evidence of a defendant's possession of weapons.  As is succinctly explained in *People v. Ringold* (1970) 13 Cal.App.3d 711, 720–721, "Where the prosecution's evidence is circumstantial, an implement by means of which it is likely that a crime was committed is admissible in evidence if it has been connected with the defendant [citations].  If the *specific* type of weapon used to commit a homicide is *not known* [,] *any weapons* found in the defendant's possession after the crime that could have been employed *are admissible.  There need [not ] be [any ] conclusive demonstration that the weapon in defendant's possession was the murder weapon*.  But if the prosecution *relies* on a *specific* weapon or type, it is error to admit evidence that other weapons were found in the defendant's possession, as this tends to show not that he committed the crime but only that he is the sort of person who carries deadly weapons  (*People v. Riser* [ (1956) ] 47 Cal.2d 566, 576–577; [citations] ).  [¶]  The distinctions set forth in [*Riser*] are not exclusively applicable to homicide cases [citations] and provide a useful guide for the instant case where we are not concerned directly with the admission of the weapon but testimony that the day before the assault, [the] defendant was seen with a revolver." (Some italics omitted, our italics added.) As a result, "testimony that defendant had a revolver the day before the assault . . . would tend to connect defendant with the crime" and was relevant on that basis.  *(Ringold*, at p. 721.)  Similarly, in *Riser*, the defendant's possession of a holster for a gun consistent with the caliber of the unknown murder weapon was "clearly admissible" (*Riser, supra*, 47 Cal.2d at p. 577) because it tended to connect the defendant with the crime and was thus relevant.  (1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 2d ed. 1982) § 21.4, pp. 551–552.)  Consequently, defendant is incorrect that the photo is irrelevant except on the inadmissible basis of improper character

evidence,[4] and trial counsel accordingly could not have been ineffective in failing to raise this inapplicable ground for exclusion. (*People v. Thompson* (2010) 49 Cal.4th 79, 122 [no duty to make futile objections]; *People v. McPeters* (1992) 2 Cal.4th 1148, 1173 [no duty to make frivolous objections].)

As for his argument regarding the trial court's application of section 352, the photo had more than minimal probative value under the above principles. Although defendant adverts to the possibility that it was not necessarily a real gun, this ultimately is beside the point. The gun displayed during the robbery also could have been a replica, but it was used to good effect in thwarting resistance from the husband. The relevance lay in defendant's possession of a similar implement, regardless of whether either of them was a real gun or not. (The use of even a replica to effect a robbery is sufficient to support a finding of personal use (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1437).) We also do not find that there was a high risk that the jury would decide the case based on an emotional bias against defendant unrelated to the evidence and issues (*People v. Doolin* (2009) 45 Cal.4th 390, 439) for photographing himself with a gun. Again, this is not an act illegal of itself and we are certain that there are numerous otherwise law-abiding citizens whose pride in gun ownership would be reflected through photographing themselves with their weapons. In rejecting the merits of defendant's substantive claim, we necessarily reject his further argument that admission of the photo evidence had the result of depriving him of due process.

Furthermore, this was not a case in which the guilty verdict could only be the product of the challenged photo evidence. Defendant's alibi and explanation that his cell phone was in his girlfriend's possession did not begin to account for the presence of his Kyocera cell phone beneath where the robbers scaled the wall, and the exchange of phone calls with his girlfriend just before the robbery, evidence of which was stored on that phone, along with the photo at issue. Even if the identification evidence otherwise was not the strongest, we are convinced beyond a reasonable doubt that the verdicts would not be different if the photo evidence were to be excluded.

*Crawford*, 2013 WL 6020805, at *2-3.

## 2. <u>Applicable Legal Standards</u>

As noted above, errors of state law do not warrant the granting of federal habeas relief. *Estelle*, 502 U.S. at 67. Accordingly, petitioner's claims that the admission into evidence of the photograph violated the California Evidence Code are not cognizable in this federal habeas

---

[4] Moreover, possession of weapons - not being an illegal act per se - does not even constitute evidence of a character trait excluded pursuant to section 1101 unless the prosecution is seeking to introduce it as proof of intent (1 Jefferson, Cal. Evidence Benchbook, *supra*, § 21.4, p. 548), which was not the situation in the present case.

1   action.  "The admission of evidence does not provide a basis for habeas relief unless it rendered

2   the trial fundamentally unfair in violation of due process."  *Johnson v. Sublett*, 63 F.3d 926, 930

3   (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 67-68).

4       A writ of habeas corpus will be granted for an erroneous admission of evidence "only

5   where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system

6   will not be competent to uncover, recognize, and take due account of its shortcomings.'"

7   *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S.

8   880, 899 (1983)).  Evidentiary rules do not violate a defendant's constitutional rights unless they

9   "infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the

10  purposes they are designed to serve."  *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)

11  (alteration in original) (internal quotation marks omitted).  Thus, the admission of evidence at

12  trial violates due process only if "there are no permissible inferences the jury may draw from the

13  evidence."  *Jammal*, 926 F.2d at 920.  Put another way, evidence must "be of such quality as

14  necessarily prevents a fair trial" for its admission to violate due process.  *Id.* (quoting

15  *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)).

16      Notwithstanding the above, the Ninth Circuit has observed that:

17          The Supreme Court has made very few rulings regarding the
            admission of evidence as a violation of due process.  Although the
18          Court has been clear that a writ should be issued when
            constitutional errors have rendered the trial fundamentally unfair
19          (citation omitted), it has not yet made a clear ruling that admission
            of irrelevant or overtly prejudicial evidence constitutes a due
20          process violation sufficient to warrant issuance of the writ.

21  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Therefore, "under AEDPA, even

22  clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit

23  the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as

24  laid out by the Supreme Court."  *Holley*, 568 F.3d at 1101.  *See also Greel v. Martel*, No. 10-

25  16847, 472 F. App'x. 503, 504, 2012 WL 907215, *1 (9th Cir. Mar. 19, 2012) ("There is likewise

26  no clearly established federal law that admitting prejudicial evidence violates due process.").[5]

27  _____

28      [5]  Citation to this unpublished Ninth Circuit opinion issued after January 1, 2007 is
        appropriate pursuant to Ninth Circuit Rule 36-3(b).

### 3. **Analysis**

In light of the authorities cited above, the state appellate court's rejection of petitioner's claim that the trial court violated his right to due process in admitting the photograph into evidence does not support the granting of federal habeas relief under AEDPA. Petitioner has cited no "clearly established federal law" prohibiting the admission into evidence of the type of photographic evidence that was admitted here. *Holley*, 568 F.3d at 1101. Nor did the admission of the photograph violate petitioner's federal right to due process. For the reasons expressed by the California Court of Appeal, the photograph was not so unduly prejudicial as to "necessarily" prevent a fair trial, given the other evidence of petitioner's guilt and the weakness of his defense arguments. Further, the photograph was not inflammatory in itself and it supported the victim's testimony that he saw one of the robbers with a silver handgun.

The decision of the California Court of Appeal denying petitioner's due process claim is not contrary to or an unreasonable application of clearly established United States Supreme Court authority. It is certainly not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Accordingly, petitioner is not entitled to federal habeas relief on this claim.

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied.

2. The Clerk of Court is directed to close the case.

3. The Court declines to issue a certificate of appealability.

DATED: August 1, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE